# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

————

JOE CHARLIE MOYA,

       Plaintiff,

v.                             No. CIV-O3-0247 BB/KBM

THE CITY OF TUCUMCARI, a
municipal corporation existing under
the laws of the State of New Mexico,
and RICHARD PRIMROSE, and
MARY MAYFIELD individually,

       Defendants.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court for consideration of Defendants the City of Tucumcari, Richard Primrose and Mary Mayfield's Motion for Summary Judgment, filed December 17, 2003 (Doc. 14) and Motion to Strike Plaintiff's Affidavit and the Affidavit of Dan Garcia, filed December 29, 2003 (Doc. 22). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Defendants' motions will be GRANTED in part, and DENIED in part.

## I. BACKGROUND

### A.    Procedural History

In his Complaint, Plaintiff Joe Charlie Moya ("Moya") brought the following claims against Defendants the City of Tucumcari, Richard Primrose and Mary Mayfield (collectively the "City Defendants"): (1) violation of procedural due process; (2) violation of his liberty interest; (3) violation of his substantive due process rights; (4) breach of contract; (5) intentional

interference with contractual relations; (6) failure to pay overtime in violation of the Fair Labor Standards Act; and (7) racial discrimination. The City Defendants moved for summary judgment on all of these claims. In his response, Moya attached his personal affidavit and the affidavit of a third party named Dan Garcia, which Moya contends create issues of material fact that are sufficient to preclude summary judgment. Subsequently, the City Defendants moved to strike both Moya's affidavit and the affidavit of Dan Garcia on the grounds that the affidavits are contradictory to deposition testimony, constitute an attempt to create a sham issue, are conclusory, and lack evidentiary foundation. This opinion addresses both the motion for summary judgment and the motion to strike.

**B.      Undisputed Facts**

This case arises from Moya's dismissal as Superintendent of the City of Tucumcari Streets and Sanitation Department. Moya originally began his employment with the Streets and Sanitation Department as a laborer in August of 1999. On April 18, 2001, former City Manager Ray Hohstadt suspended the former Superintendent, and appointed Moya as the "acting" Superintendent.

Shortly thereafter, on April 27, 2001, the position of Superintendent was posted as an open position. Moya submitted an application and resume for the permanent position. Although Moya denies being told that the position of Superintendent was an "at will" position, the application he signed contained a provision informing him that "the Employee may resign at any time and the Employer may discharge Employee at any time with or without cause." Def. Mot. S.J., Ex. C, Moya Depo., at 93-94 and Ex. C and D thereto. Moreover, upon his initial hire,

Moya signed a form indicating that he had read and received a copy of the City Personnel Ordinance. *Id*. at 193 and Ex. O thereto.

There is a dispute over whether or not Moya was ever appointed as permanent Superintendent of Streets and Sanitation. Moya claims that former City Manager Hohstadt never appointed him as permanent Superintendent because of pressure from Defendant City Counselor Mary Mayfield.[1] The City records reflect, however, a memorandum written by former City Manager Hohstadt announcing that Moya had been selected as Superintendent of Streets and Sanitation. Def. Mot. S.J., Ex. B., Hicklin Affidavit, and Ex. B-4 thereto. Moya denies that he was informed of this memo or appointment.

Regardless of his title, Moya managed the Department of Streets and Sanitation, and exercised all of the duties of Superintendent. Although some of Moya's duties are disputed, it is undisputed that Moya supervised 22 employees, attended department head meetings, and met regularly with the City Manager concerning the operation of the Department of Streets and Sanitation. Moreover, Moya represented himself to the public as the Superintendent of Streets and Sanitation.

As Superintendent, the basis for Moya's pay is in dispute. The City Defendants dispute Moya's claim that he was paid by the hour. It is not disputed, however, that Moya's starting pay was $1372.80 every two weeks. This amount was based on an hourly wage of $17.16 per hour.

---

[1] At some point in his employment with the City, Defendant Mayfield expressed concern that Moya was working for the City due to a prior felony conviction. Although Defendant Mayfield denies it, Moya also believed that she was upset because Moya's wife had made a decision when she was City Manager that resulted in Mayfield's sister-in-law losing her job.

Throughout his employment, Moya was paid a regular amount every two weeks. This amount was unaltered by the number of hours he worked or the quality of his work.

In March of 2002, former City Manager Hohstadt died. His replacement was Defendant Richard Primrose. At some point Defendant Primrose became concerned about write-ups from the New Mexico Environment Department regarding the landfill and with Moya's management of the Department of Streets and Sanitation. Moya claims that Defendant Primrose treated him unfairly because of political and personal reasons. Toward the end of 2002 Defendant Primrose required all department heads to begin submitting time cards. There is a dispute over whether Moya was required to start this practice several weeks earlier than the other department heads.

On February 10, 2003, Defendant Primrose notified Moya by letter that Moya was being terminated as Superintendent. As justification for this decision, Defendant Primrose cited a failure of the department to work in a unified fashion and concerns over the violation notices for the landfill. Subsequently, Moya brought this suit alleging a number of violations associated with his employment and dismissal from the City.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In evaluating a motion for summary judgment, the court views the evidence and draws all reasonable inferences therefrom in the light most favorable to the nonmoving party. *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999). However, it is

"not required to evaluate every conceivable inference which can be drawn from evidentiary matter, but only reasonable ones." *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988). Summary judgment is inappropriate if disputes remain as to material facts. *See James Barlow Family Ltd. Partnership v. David M. Munson, Inc.*, 132 F. 3d 1316, 1319 (10th Cir. 1997). An issue of fact is "material" if it is essential to the proper disposition of the claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

### III. DISCUSSION

Moya brings the following claims against the City Defendants: (1) violation of procedural due process; (2) violation of his liberty interest; (3) violation of his substantive due process rights; (4) breach of contract; (5) intentional interference with contractual relations; (6) failure to pay overtime in violation of the Fair Labor Standards Act; and (7) racial discrimination. The City Defendants argue that they are entitled to summary judgment on all of these claims. In addition, the City Defendants request that the Court strike Moya's affidavit and the affidavit of Dan Garcia. As discussed below, the Court will disregard the portions of the affidavits that are unsupported, conclusory, or an attempt to create a sham factual issue.

### A.     Motion to Strike

As an initial matter, the City Defendants argue that the Moya and Dan Garcia affidavits should be struck or disregarded by the Court. Whether to exclude evidence at the summary judgment stage is a matter within the discretion of the trial judge. *Sports Racing Servs., Inc. v. Sports Car Club*, 131 F.3d 874, 894 (10th Cir. 1997). The general rule is that "[a]ffidavits that

conflict with or contradict a party's prior deposition testimony should be disregarded in determining whether a genuine issue of fact exists so as to preclude summary judgment." 49 C.J.S. *Judgments* § 266, at 381 (1997). In deciding whether an affidavit is an attempt to create a sham issue of fact, the relevant factors are "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion which the affidavit attempts to explain." *Sprots Racing Servs., Inc.* at 893-94; *see also Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1016 (10th Cir. 2002).

After reviewing the record, the factors for deciding whether to exclude an affidavit as an attempt to create a sham issue of fact weigh in favor of the Defendants.[2] First, Moya was represented by counsel and cross-examined during his deposition. *See Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Second, because there is no newly discovered evidence, there is no question Moya should have been aware of the facts at the time of the deposition. *See id.* Third, there is nothing in the deposition testimony reflecting any level of confusion or uncertainty concerning Moya's testimony which might require clarification or explanation. *See id.* In addition, to survive summary judgment, "nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir.1991); *see also Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). For these reasons, as discussed

---

[2]The Court notes that this is not the first time that Plaintiff's counsel has been admonished for attempting to create a sham issue of fact. *See Salguero v. The City of Clovis*, Civil No. 02-319 WJ/LCS (Dist. NM 2002) (unpublished).

in more detail below, the Court will disregard the sections of the affidavits that are contradictory or merely conclusory and self-serving.

**B.      Procedural Due Process**

Initially, the City Defendants seek summary judgment on Moya's claim for violation of his rights to procedural due process.  In order for procedural due process to apply, Moya must have a protected property interest in his employment.  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972).  Property interests are created and their dimensions defined by state law.  *Id.* at 577.  The threshold issue is whether Moya had "a legitimate claim of entitlement" in continued employment.  *Id.*; *Farthing v. City of Shawnee, Kan.*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A legitimate claim of entitlement may be grounded in various sources of state law, including "state statutes, local ordinances, established rules, or mutually explicit understandings."  *Dickeson v. Quarberg*, 844 F.2d 1435, 1437 (10th Cir. 1988).  The Court therefore turns its attention to New Mexico law to determine if Moya possessed a protected property interest.

Under New Mexico law a city may exempt high-level appointed officials from its merit ordinance or designate those same officials as at-will employees.  *See Silva v. Town of Springer*, 912 P.2d 304, 308 (NM 1996).  Ordinance 929, the applicable Personnel Ordinance for the City, defines a department head as "[a]n appointee of the city manager who has responsibility for supervising and administering a department of city government and who is an unclassified employee."  Defs. Mot. S.J., Ex. B, Ordinance 929, section 2.13.  The Personnel Ordinance further instructs that department heads are unclassified employees who are terminable-at-will.  *Id.* at section 3.2.  Finally, "[a] terminable-at-will employee serves at the discretion of the city, and his employment can be terminated with or without cause."  *Id.* at 2.33.  It follows that if Moya was

employed with the City as a department head, then he was an unclassified employee with no property interest in his employment. *See, e.g., Lihosit v. I & W., Inc.*, 913 P.2d 262, 266 (NM App. 1996) (at-will employees may be discharged for no reason at all).

Moya argues that he was not an at-will employee and did have a property interest in his employment for three reasons. First, Moya argues that he was only the "acting," and not the "permanent" Superintendent of the Streets and Sanitation Department. Even assuming that this is true, which the City Defendants dispute, Moya fails to explain why an acting Superintendent should be entitled to a greater interest in employment than a permanent Superintendent. The Court is aware of no authority, and Moya does not cite any, that supports this contention. *Cf. Thomason v. McDaniel*, 793 F.2d 1247, 1249 (10th Cir. 1986) ("a temporary employee . . . has no right to notice and a hearing since his tentative and restricted employment does not amount to a property interest").

Next, Mora argues that his position as Superintendent was not a department head position. The only evidence Moya has to support this conclusion is his affidavit. *See* Pls. Resp., Ex. 2 at ¶ 9. However, the affidavit statements directly contradict Moya's deposition testimony. For example, at Moya's deposition the following exchange took place:

Q: Do you call it superintendent? Or what term do you use for head of the department?

A: Superintendent, I think.

Def. Mot. S.J., Ex. C at 77. For the reasons discussed above, the Court concludes that the affidavit statements are an attempt to create a sham issue of fact, and it will disregard them. In addition, regardless of his position title, it is undisputed that as Superintendent Moya managed the Streets and Sanitation Department. He therefore met the Personnel Ordinance definition for a

department head because he was "[a]n appointee of the city manager who [had] responsibility for supervising and administering a department of city government. . . ."  Defs. Mot. S.J., Ex. B, Ordinance 929, section 2.13.

Last, Moya argues that he was paid on an hourly basis and hourly employees are not exempt under the Personnel Ordinance.  Notwithstanding this assertion to the contrary, there is abundant evidence in the record that Moya was actually paid a salary that was derived from a base hourly wage.  Once again, the only evidence to the contrary is Moya's affidavit statement that he "was always paid on an hourly basis."  Pls. Resp., Ex. 2 at ¶ 12.  The Court finds that this statement is conclusory, self-serving, and so wholly lacking in foundation that it is inadmissible under the Federal Rules of Evidence.  *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995).

Therefore, the Court finds that Moya lacked a property interest in his employment, and the City Defendants are entitled to summary judgment on Moya's procedural due process claim.

## C.    Liberty Interest

Next, the City Defendants seek summary judgment on Moya's claim of a violation of his constitutionally protected liberty interest.  Moya bases this claim on the affidavit statement of Dan Garcia in which Garcia states that at a League of United Latin American Citizens (L.U.L.A.C.) meeting, he overheard Pat Prieto, an employee of the Tucumcari City Housing Authority,  state that Moya had been fired for stealing cement. Pls. Resp., Ex. 1.  According to Moya, this violated his liberty interest in his good name and reputation.  As discussed below, however, the City Defendants are entitled to summary judgment on this claim for two independent reasons.

First, the City Defendants argue that the affidavit of Dan Garcia should be disregarded because it is inadmissible hearsay. Moya argues that Garcia's statement is not hearsay because Pat Prieto is an "agent" of the City of Tucumcari, and it is therefore an admission by a party opponent. Fed R. Evid. 801(d)(2)(D). In order to be considered an admission of a party opponent, however, Rule 801(d)(2)(D) requires that the statement be made "by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship . . . ." It is undisputed that Pat Prieto was a secretary/receptionist for the Housing Authority. *See* Def. Mot. Strike, Ex. H at 5. For this reason, any statement that Pat Prieto made about the reason for the discharge of the Superintendent of Streets and Sanitation was not within the scope of her agency or employment. *See Boren v. Sable*, 887 F.2d 1032 (10th Cir. 1989); *see also Fester v. Farmer Bros. Co.*, 49 Fed.Appx. 785 (10th Cir. 2002) (unpublished) (in order for employee's statement to qualify as a party admission, employee must have actually been involved in the decision to hire or fire the person bringing the charge). Moya also contends that Prieto's statement is admissible as an exception to the hearsay rule because Prieto indicates a lack of memory regarding her statements at the L.U.L.A.C. meeting. The Court has reviewed Prieto's deposition testimony, and it disagrees with Moya's characterization of the evidence. Def. Mot. Strike, Ex. H at 6-7. Rather than a lack of memory, Prieto's testimony amounts to a denial that she made such a statement or that she even heard the reason for Moya's discharge. *Id.* For this reason, the Court will disregard Dan Garcia's affidavit.

Even if the Court were to consider Dan Garcia's affidavit, however, the City Defendants would still be entitled to summary judgment. In order for a plaintiff to succeed on such a claim in the Tenth Circuit, he must show that his reputation was damaged "in connection with [an] adverse

action taken against [him]." *Flanagan v. Munger*, 890 F.2d 1557, 1571 (10th Cir.1989). In other words, "defamation, standing alone, [is] not sufficient to establish a claim for deprivation of a liberty interest." *Renaud v. Wyoming Dep't of Family Servs.*, 203 F.3d 723, 726-27 (10th Cir.2000).

In *Workman v. Jordan*, 32 F.3d 475 (10th Cir.1994), the Tenth Circuit annunciated a four-part test for whether statements infringe upon "a liberty interest in [one's] good name and reputation as it affects [one's] property interest in continued employment." *Id*. at 480.

> First, to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee. Second, the statements must be false. Third, the statements must occur in the course of terminating the employee *or must foreclose other employment opportunities*. And fourth, the statements must be published.

*Id*. at 481 (citations omitted) (emphasis added). Subsequently, the Tenth Circuit reviewed the emphasized language in light of the Supreme Court decision of *Siegert v, Gilley*, 500 U.S. 226 (1991). In *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1154 (10th Cir. 2001), the court found that in order for a liberty interest violation to be actionable, the allegedly false statements must be made incident to the former employee's discharge. *Id*. It is undisputed that any statements that Pat Prieto may have made at the L.U.L.A.C. meeting were not incident to Moya's discharge.[3] For these reasons, the City Defendants are entitled to summary judgment on Moya's claim of a violation of his liberty interest.

**D.      Substantive Due Process**

Moya also claims that the City Defendants violated his right to substantive due process. In order to succeed on this claim, Moya must establish that he had a property or liberty interest in

---

[3]Again, because Pat Prieto was a secretary to the Housing Authority and unrelated to Moya's department, she was also not authorized to speak on behalf of the City Defendants.

his lost employment. *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1198 (10th Cir. 2000). As discussed above, Moya is unable to establish either a property or liberty interest, and his claim for a violation of his substantive due process rights is, therefore, foreclosed.

In addition, even if Moya were able to establish a property or liberty interest in his employment with the City of Tucumcari, he must still establish that the deprivation of that interest was arbitrary and capricious. *Clinger v. New Mexico Highlands Univ. Bd. of Regents*, 215 F.3d 1162, 1167 (10th Cir. 2000). Only the most egregious official conduct qualifies as arbitrary in the constitutional sense. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). A plaintiff's substantive due process rights are only violated when the defendant's actions can properly be characterized as egregious or shocking to the conscience by constitutional standards. *Collins v. Harker Heights*, 503 U.S. 115, 128 (1992).

The conduct alleged by Moya does not rise to the level of being arbitrary or shocking to the conscience. *See Warren v. Crawford*, 927 F.2d 559 (11th Cir. 1991). Therefore, even if Moya were able to establish a property or liberty interest in his employment, he has still failed to make a showing that the City Defendants' actions amount to a violation of his substantive due process rights. Accordingly, the City Defendants' motion for summary judgment on the issue of substantive due process is granted.

**E.      Failure to Pay Overtime**

The City Defendants next contend that they are entitled to summary judgment on Moya's claim for overtime under the Fair Labor Standards Act ("FLSA"). *See* 29 U.S.C. §§ 201 et seq. FLSA requires employers to pay overtime for hours worked in excess of forty hours per week. 29 U.S.C. § 207(a). However, the statute exempts employees working in executive capacities.

12

29 U.S.C. § 213(a)(1). The City Defendants assert that the executive exemption applies to Moya, and that it is, therefore, not required to pay him overtime.

The City bears the burden of showing that Moya falls within the FLSA exemption. *Corning Glass Works v. Brennan*, 417 U.S. 188, 196-97 (1974); *Dept. of Labor v. City of Sapulpa*, 30 F.3d 1285, 1287 (10th Cir. 1994). FLSA exemptions are to be narrowly construed, so an employee must fit "plainly and unmistakenly within the exemption's terms." *Aaron v. City of Wichita*, 54 F.3d 652, 657 (10th Cir. 1995).

With this standard in mind, the Court must review whether Moya qualified for the executive exemption. An employee qualifies for the executive exemption if he satisfies one of two tests in the FLSA regulations. The long test defines an executive employee as an employee:

> (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretionary powers; and
> (e) Who does not devote more than 20 percent . . . of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section . . .; and
> (f) Who is compensated for his services on a salary basis at a rate of not less than $155 per week . . . .

29 C.F.R. § 541.1.

The short test applies to employees earning a salary of more than $250 per week. "An employee satisfies the short test if her 'primary duty' is management and includes the customary and regular supervision of two or more full-time employees." *Hays v. City of Pauls Valley*, 74 F.3d 1002, 1007-1008 (10th Cir. 1996). "Primary duty" is typically defined as "the major part,

or over 50 percent, of the employee's time." 29 C.F.R. § 541.103.  However, "[t]ime alone . . . is

not the sole test."  *Id*.

> When an employee spends less than 50 percent of his time on management, four other
> factors should be considered: "[1] the relative importance of the managerial duties as
> compared with other types of duties, [2] the frequency with which the employee exercises
> discretionary powers, [3] his relative freedom from supervision and [4] the relationship
> between his salary and the wages paid other employees for the kind of nonexempt work
> performed by the supervisor."  Thus an employee may spend more than 50 percent of his
> time on nonexempt work and still be considered an executive if other pertinent factors
> support such a conclusion.

*Hays*, 74 F.3d at 1008 (quoting 29 C.F.R. § 541.103).

Moya argues that the executive exemption does not apply because Moya was not a

salaried employee, and because his primary duty was not of an executive nature.  Whether his pay

was in the form of a salary or not, it is undisputed that Moya received over $250 per week in total

compensation.  For this reason, the Court will apply the FLSA short test to determine if Moya

qualified for the executive exemption.

According to the regulations, "[a]n employee will be considered to be paid 'on a salary

basis' . . .  if under his employment agreement he regularly receives each pay period on a weekly,

or less frequent basis, a predetermined amount constituting all or part of his compensation, which

amount is not subject to reduction because of variations in the quality or quantity of the work

performed."  29 C.F.R. § 541.118(a).  Moya's argument that he was not a salaried employee is

based on his contention that he was paid by the hour.  The evidence that Moya cites in support of

this contention is Moya's own conclusory statement in his affidavit that he was paid by the hour,

and the fact that he was required to submit a time card.  As discussed above, Moya's conclusory

and self-serving affidavit statement will be disregarded by the Court.  *See, e.g., Murray v. City of*

*Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). Moreover, even accepting that Moya's pay was determined on an hourly basis and that he was required to submit a time card, it does not follow that Moya was paid by the hour. Rather, as discussed above, these facts are consistent with a salary, and there is no genuine issue of material fact on this issue.

Moya's assertion that his primary duty was not executive in nature is, likewise, without merit. Moya claims that he spent more than 65 percent of his time doing manual labor. Even assuming that this unsupported, self-serving and conclusory statement is true, the primary duty factors weigh in favor of finding that the executive exemption applied to Moya. As superintendent, Moya was responsible for managing the Department of Streets and Sanitation. Moya's contention in his affidavit that he had no discretion is self-serving and conclusory, as well as contradictory to his deposition testimony. In his deposition, Moya testified that, amongst other discretionary tasks, he helped prepare a budget, supervised 22 employees, prepared lists of duties for the employees within his department, disciplined employees, authorized the use of overtime, and had the full duties of the Superintendent of Streets and Sanitation. Def. Mot. S.J., Ex. C, Moya Depo., at 96, 101-03, 123-24, 138-39, 140 and 150-51. For this reason, Moya's subsequent affidavit contentions will be disregarded, and the Court finds that Moya's primary duty was executive in nature. Accordingly, the executive exemption applies to Moya, and the City Defendants are entitled to summary judgment on Moya's claim for overtime.

**F.      Racial Discrimination Claim**

Finally, the City Defendants seek summary judgment on Moya's claim of racial discrimination brought under 42 U.S.C. § 1981.

A claim of unlawful employment discrimination can be proven through either direct or circumstantial evidence. *Kendrick v. Penske Transp. Services, Inc.,* 220 F.3d 1220, 1225 (10th Cir.2000) (citing *Shorter v. ICG Holdings, Inc.* 188 F.3d 1204, 1207 (10th Cir.1999) and *Elmore v. Capstan, Inc.,* 58 F.3d 525, 529 (10th Cir.1995)). Such a claim can survive summary judgment only where the plaintiff has presented sufficient evidence as to show there is a genuine issue of material fact pertaining to whether the plaintiff's race actually motivated the allegedly discriminatory conduct. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000); Fed.R.Civ.P. 56(c).

In determining whether the circumstantial evidence presented by the plaintiff in a given case is sufficient to establish a genuine issue of material fact, the Supreme Court has directed the application of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green* 411 U.S. 792, 802-05 (1973). The *McDonnell Douglas* framework comprises three burden shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of racial discrimination. *Id.* at 802. If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action. *Id.* Finally, if the defendant articulates a nondiscriminatory reason, the burden shifts back to the plaintiff to show the proffered reason is merely a pretext for racial discrimination. *Id.* at 804. Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate. *Reeves,* 530 U.S. at 148.

In this case, Moya has made a prima facie showing of discrimination. He is a Hispanic male who was qualified for his position with the City, and who was replaced by a White male. The City Defendants do not dispute this prima facie showing. Instead, they note that Moya did

16

not raise the issue of discrimination at his deposition, and there were legitimate non-discriminatory reasons for Moya's termination. Specifically, in Mr. Primrose's termination letter to Moya, he noted problems concerning Moya's ability to work with others as well as repeated violations at the landfill that resulted in write-ups from the State of New Mexico Environment Department. Def. Mot. S.J., Ex. A, Primrose Depo., at 45-88; Def. Mot. S.J., Ex. C, Moya Depo., at 159-61, 169, 166, and 171-72 and Ex. H, I, J, K, and L thereto.

Under the *McDonnell Douglas* framework, the burden shifts back to Moya to offer evidence that the proffered reason is pretextual. Moya offers a variety of different reasons and accompanying evidence of pretext, but the Court only need address one. One of the main justifications cited by the City for Moya's dismissal was the repeated violations at the landfill for blowing trash. Moya has presented evidence in the form of deposition testimony from several City employees that the problem with blowing trash at the landfill has been an ongoing problem for at least twenty years, and that write-ups from the Environment Department have been common over that period of time. Pl's Resp., Ex.3, Garcia Depo, at 21-23; Pl's Resp., Ex.5, Moore Depo, at 11-15; Pl's Resp., Ex.7, Quintana Depo, at 3-6. Moreover, other individuals in Moya's position, including the current Superintendent of Streets and Sanitation, were not fired because of violations for blowing trash. The Tenth Circuit has explained that summary judgment for a defendant in a discrimination case is not appropriate where the Plaintiff has produced evidence that the proffered explanation was pretextual. *See Doebele v. Sprint*, 342 F.3d 1117, 1135-36 (10th Cir. 2003) ("the plaintiff need not show both that the defendant's reasons were a pretext and that the real reason was discrimination – the fact of pretext alone may allow the inference of discrimination); *Townsend v. Lumbermens Mutual Casualty Co.*, 294 F.3d 1232,

1241 (10th Cir. 2002). The Court finds that the evidence of problems with the landfill under other superintendents is sufficient to create an issue of fact over whether Moya's discharge was pretextual. Nor is the fact that Moya failed to raise discrimination at his deposition dispositive. The rule that evidence be construed in favor of the party opposing summary judgment requires a direct conflict with deposition testimony and should not be applied where a party was not being questioned about a specific claim. *See, e.g., Alabama Classic Homes, Inc. v. Wickes Lumber Co.*, 836 So.2d 885, 888-89 (Ala. Civ. App. 2002). *Cf. Lantec, Inc.*, 306 F.3d at 1016 (court should consider whether affiant was cross examined at deposition).

For these reasons, summary judgment is not appropriate on Moya's claim of racial discrimination, and the motion is denied.

## G.    Breach of Contract and Intentional Interference with Contractual Relations

Moya makes claims for breach of contract and intentional interference with contractual relations. The City Defendants seek summary judgment on both claims.

New Mexico follows the general rule that employment is terminable at will by either the employee or the employer, absent an express contract to the contrary. *Lopez v. Kline*, 953 P.2d 304 (NM App. 1997). An exception to the general rule is the existence of an implied contract that limits an employer's authority to discharge. *Id.* Moya did not have an express contract with the City. Further, he does not argue that his relationship with the Clity was modified in any way. In addition, as discussed above, the Personnel Ordinance indicates that the position of Superintendent of Streets and Sanitation was an "at-will" position. Thus, the City Defendants were entitled to dismiss Moya for no reason at all, and there was no breach of contract. Summary judgment is, therefore, granted on the claim of a breach of contract.

18

Moya makes an additional claim for intentional interference with contractual relations. This represents a claim of a tort committed against Moya by the City of Tucumcari and its representatives. An individual may not bring an action against an entity of the State or one of its representatives unless the State has waived its immunity from suit. The New Mexico Tort Claims Act addresses the tort claims for which New Mexico has waived its immunity. *See* NMSA 1978 §§ 41-4-1 through 41-4-29. The tort of an intentional interference with contractual relations is not included in the New Mexico Tort Claims Act, and there is no indication that New Mexico has waived its immunity for this claim.[4] *Id.* Thus, an action against the City Defendants can not be sustained, and summary judgment is granted.

## IV. CONCLUSION

For the reasons set forth above, the Court finds that summary judgment be granted in part and denied in part.

## V. ORDER

**IT IS ORDERED** that Defendants' Motion for summary judgment be DENIED as to Moya's racial discrimination claim. It is further ordered that summary judgment be GRANTED for the procedural due process, liberty interest, substantive due process, Fair Labor Standards Act, breach of contract and intentional interference with contractual relations claims. Finally, the Court finds that Defendants' Motion to Strike will be GRANTED in part, and DENIED in part.

---

[4]Although this issue was not briefed by the parties, it is a jurisdictional issue that the Court may raise sua sponte. *See Mascheroni v. Bd. of Regents of the Univ. of California*, 28 F.3d 1554, 1560 (10th Cir. 1994).

**DATED** at Albuquerque this 21st day of April, 2004.


BRUCE D. BLACK
United States District Judge

**Attorneys:**

For Plaintiff:

      Eric Dixon
      309 South Avenue A.
      Portales, NM  88130

For Defendants:

      Virginia Anderman
      Miller Stratvert P.A.
      500 Marquette N.W., Suite 1100
      P.O. Box 25687
      Albuquerque, NM 87125-0687